629 F.2d 397
 William Rice LUMMIS, Texas Temporary Administrator of the
Estate of Howard R. Hughes, Jr., Deceased,
Plaintiff-Appellant Cross Appellee,
v.
Mark WHITE, Bob Bullock, Kenneth Cory, H. B. Alvord, et al.,
Defendants-Appellees.
Kenneth Cory, H. B. Alvord, Defendants-Appellees Cross Appellants.
 No. 79-2898.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 27, 1980.
 
 Andrews, Kurth, Campbell & Jones, O. Clayton Lilienstern, Houston, Tex., Pat Stevenson, Graves, Dougherty, Hearon, Moody & Garwood, R. James George, Jr., Austin, Tex., James W. Moore, New Haven, Conn., for plaintiff-appellant cross-appellee.
 Paul J. Van Osselaer, Austin, Tex., M. Carr Fersugson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Sec., Richard Farber, Atty., Tax Div. Dept. of Justice, Washington, D.C., Brown, Maroney, Rose, Baker & Barber, Charlie D. Dye, William D. Deaderick, Asst. Atty. Gen., Taxation Div., Austin, Tex., Jerome B. Falk, Steven L. Mayer, Jerome B. Falk, Jr., San Francisco, Cal., Gibson, Dunn & Crutcher, Ronald E. Gother, Los Angeles, Cal., McGinnis, Lochridge & Kilgore, Rick Harrison, Clark, Thomas, Winters & Shapiro, Donald S. Thomas, Austin, Tex., for defendants-appellees.
 Appeals from the United States District Court for the Western District of Texas.
 Before VANCE and SAM D. JOHNSON, Circuit Judges, and THOMAS, District Judge*.
 VANCE, Circuit Judge:
 
 
 1
 Howard Robard Hughes, Jr. died on April 5, 1976, leaving an estate that state taxing authorities estimate at $1.1 billion and the administrators estimate at $167 million.[1] Hughes' assets primarily consisted of the stock of Summa Corporation, a wholly-owned Delaware corporation. Administrators were appointed in each of the five states where the estate's property is located: Texas, California, Nevada, Delaware, and Louisiana.[2] The claimants include twenty-one heirs who have entered a settlement agreement, about 386 other alleged heirs who have appeared in various state administration proceedings, twelve law firms, two states, an alleged wife, and a medical institution. Numerous purported wills have been offered for probate.
 
 
 2
 Both Texas and California claim Hughes as a domiciliary and assert their rights to levy state death taxes on his estate.[3] The administrators, however, allege that Hughes was domiciled in Nevada, and it is not surprising that Nevada has no state inheritance taxes. If both Texas and California levy death taxes, the total of those taxes and the federal estate tax might equal over 100 percent of Hughes' estate.[4] Because of this impossibility the administrators seek a binding determination of Hughes' domicile.
 
 
 3
 After an eleven-week trial, a jury in a Texas probate court rejected the "Mormon will," which had been offered for probate, and determined that Hughes was domiciled in Texas at the time of his death. Three days before the Texas trial began, California, seeking a determination that Hughes was not domiciled in Texas, petitioned the United States Supreme Court for leave to file a complaint against Texas under the Court's original jurisdiction. See U.S.Const. Art. III, § 2, cl. 2; Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939) (involving Hetty Green's fortune). In California v. Texas, 437 U.S. 601, 98 S.Ct. 3107, 57 L.Ed.2d 464 (1978), however, the Court unanimously denied California's motion. In concurring opinions, four members of the Court suggested that the administrators might obtain a domicile determination binding on both Texas and California under the federal interpleader statute, 28 U.S.C. § 1335, because Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), had undermined the rationale of Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937).
 
 
 4
 William Rice Lummis, the Texas temporary administrator, then filed this interpleader action under 28 U.S.C. §§ 1335 and 1397 in district court and named state and local taxing officials of California, state taxing officials of Texas, the California special administrator of the Hughes estate, and the Nevada administrators of the estate as defendants. The court realigned the defendant administrators with the plaintiff administrators because it found that they were working in unison toward a common goal. See City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180-81, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). It then dismissed the action because it found that the diversity requirement of section 1335 was not satisfied. Lummis now appeals the dismissal by the district court.
 
 
 5
 The Texas taxing officials assert that Worcester County Trust Co. bars Lummis' suit and that the parties to the suit do not fulfill the section 1335 diversity requirement. The California officials contend that the district court has jurisdiction to grant relief under section 1335 only if the asserted heirs are joined as parties-plaintiff and their citizenship is considered for purposes of diversity.[5] Although we find that the asserted heirs need not be joined, we conclude that the district court erred in denying Lummis the remedy of interpleader.
 
 
 6
 * Interpleader enables a person holding a fund to compel persons asserting conflicting claims to that fund to adjudicate their rights to the fund in a single action. State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 534, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967); Texas v. Florida, 306 U.S. at 405-06, 59 S.Ct. at 567; F. James, Civil Procedure § 10.21 (1965); 3A Moore's Federal Practice P 22.02(1), at 22-4 (2d ed. 1979). The remedy developed in equity and is governed by equitable principles. Fulton v. Kaiser Steel Corp., 397 F.2d 580, 583 (5th Cir. 1968); see Texas v. Florida, 306 U.S. at 406-07, 59 S.Ct. at 567-568.[6]
 
 
 7
 The common law history of this remedy begins with detinue actions and continues with the equitable strict bill of interpleader. Under the traditional strict bill of interpleader, the stakeholder did not assert an interest in the fund or contest the extent of the liability. Hazard & Moskovitz, An Historical and Critical Analysis of Interpleader, 52 Calif.L.Rev. 706, 735-49 (1964); 3A Moore's Federal Practice, supra P 22.03; 7 C. Wright & A. Miller, Federal Practice and Procedure § 1701 (1972); see 4 J. Pomeroy, Equity Jurisprudence § 1322 (5th ed. S. Symons 1941). The stakeholder simply brought the money or property into court and was discharged, leaving the rival claimants to litigate their entitlement to the fund. See Texas v. Florida, 306 U.S. at 406, 59 S.Ct. at 567; 3A Moore's Federal Practice, supra P 22.02(1). Because the strict bill of interpleader did not afford relief to all stakeholders, courts gradually developed the bill in the nature of interpleader. Texas v. Florida, 306 U.S. at 406, 59 S.Ct. at 567; Chafee, Modernizing Interpleader, 30 Yale L.J. 814, 839 (1921); Hazard & Moskovitz, supra at 745-47. Through a bill in the nature of interpleader, a stakeholder that asserted an interest in the fund or denied liability to one or more of the claimants called "upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims." Texas v. Florida, 306 U.S. at 406-07, 59 S.Ct. at 568. Accord, Hazard & Moskovitz, supra at 745, 747; see generally D. Louisell & G. Hazard, Pleading and Procedure 760-64 (3d ed. 1973); A. Scott & R. Kent, Civil Procedure 917-18 (2d rev. ed. 1967). Both remedies, strict bills of interpleader and bills in the nature of interpleader, were embodied in the Federal Interpleader Act of 1936, 28 U.S.C. § 1335,[7] and in the form of interpleader provided in 1938 by Rule 22(1) of the Federal Rules of Civil Procedure. Haynes v. Felder, 239 F.2d 868, 871 (5th Cir. 1957); 3A Moore's Federal Practice, supra P 22.07, at 22-47; 7 C. Wright & A. Miller, supra § 1701, at 357, 360.[8]
 
 
 8
 Presently there are two types of interpleader in federal courts: statutory interpleader under section 1335 and traditional equitable interpleader governed by Rule 22. See generally F. James, supra at 513-14; C. Wright, The Law of Federal Courts 362-63, 365-66 (3d ed. 1976). The salient difference is that section 1335 interpleader enjoys more liberal procedural rules: the statute reduces the jurisdictional amount to $500, requires only minimal diversity among the claimants, authorizes venue in any district where any claimant resides, and affords nationwide service of process. 28 U.S.C. §§ 1335, 1397, 2361. By contrast, Rule 22 interpleader falls under the usual rules for civil actions: a jurisdictional amount of $10,000, complete diversity between the stakeholder and the claimants (unless there is a federal question), venue where all plaintiffs or all defendants reside or where the claim arose, and statewide service of process. Id. §§ 1332(a)(1), 1391(a); Fed.R.Civ.P. 4. See generally M. Green, Basic Civil Procedure 92-93 (2d ed. 1979).
 
 
 9
 Lummis' action, brought under section 1335, is a bill in the nature of interpleader to determine Hughes' domicile at the time of his death. California v. Texas, 437 U.S. at 610-11, 98 S.Ct. at 3113 (Stewart, J., concurring); cf. Texas v. Florida, 306 U.S. at 401, 59 S.Ct. at 565. As administrator of Hughes' estate, Lummis disputes the extent of the estate's liability to the taxing authorities of Texas and California, asserting that Hughes was domiciled in Nevada when he died. Through the equitable remedy of statutory interpleader, Lummis and the other administrators joined with him as plaintiffs seek "to require litigation of the inconsistent tax claims in a single forum in order to avert the risk of loss to the estate that would result from separate adjudications." California v. Texas, 437 U.S. at 611, 98 S.Ct. at 3113 (Stewart, J., concurring) (emphasis in original).
 
 II
 
 10
 In Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937), as in this case, the executor of an estate threatened with the assessment and collection of death taxes by two states brought a section 1335 action for a determination of the decedent's domicile. The Supreme Court, however, found that the suit was actually a suit against the state, and thus that it was barred by the eleventh amendment.[9] Id. at 300, 58 S.Ct. at 188.
 
 
 11
 In his concurring opinion in California v. Texas, Justice Stewart, joined by Justice Powell and Justice Stevens, observed that "this holding has been substantially undercut by subsequent developments." 437 U.S. at 608 n.10, 98 S.Ct. at 3112 n.10. Justice Powell, concurring separately in the same case, emphasized that
 
 
 12
 in light of Edelman v. Jordan, 415 U.S. 651 (94 S.Ct. 1347, 39 L.Ed.2d 662) (1974), this Court's decision in Worcester County Trust Co. v. Riley, 302 U.S. 292 (58 S.Ct. 185, 82 L.Ed. 268) (1937), no longer can be regarded as a bar against the use of federal interpleader by estates threatened with double death taxation because of possible inconsistent adjudications of domicile.
 
 
 13
 Id. at 615, 98 S.Ct. at 3116. Justice Brennan, also concurring, quoted Justice Powell's statement with approval. Id. at 601, 98 S.Ct. at 3108. In the absence of any opposing view, this court should not ignore the guidance provided by four members of the Supreme Court.
 
 
 14
 Worcester County Trust Co. was based on the view that the eleventh amendment barred all suits in which plaintiffs sought to restrain or to compel the action of state officials performing official duties imposed by constitutional state laws. 302 U.S. at 296-300, 58 S.Ct. at 186-188. Thirty-seven years later, the Court in Edelman clarified
 
 
 15
 that the Eleventh Amendment bars only suits "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," (Edelman v. Jordan,) 415 U.S., at 663, (94 S.Ct., at 1356) and not actions which may have "fiscal consequences to state treasuries . . . (that are) the necessary result of compliance with decrees which by their terms (are) prospective in nature," id., at 667-668, (94 S.Ct., at 1357-1358) at least in a case such as this, where the very controversy is a result of our federal system. An interpleader action to prevent competing States' taxing officials from levying death taxes on the basis of possible inconsistent adjudications of domicile unquestionably would fall into the latter category.
 
 
 16
 California v. Texas, 437 U.S. at 616, 98 S.Ct. at 3116 (Powell, J., concurring). Because Lummis requests only prospective, equitable relief the eleventh amendment does not preclude his suit. See generally Milliken v. Bradley, 433 U.S. 267, 289-90, 97 S.Ct. 2749, 2761-62, 53 L.Ed.2d 745 (1977); Gay Student Services v. Texas A & M University, 612 F.2d 160, 164-65 (5th Cir. 1980).[10]
 
 III
 
 17
 The federal interpleader statute was enacted under the authority of the Constitution in article III, section 2, clause 1, which grants federal courts original jurisdiction over civil cases that arise between citizens of different states. Treinies v. Sunshine Mining Co., 308 U.S. 66, 71-72, 60 S.Ct. 44, 47, 84 L.Ed. 85 (1939). To enable a federal court to have jurisdiction over an action, therefore, section 1335 requires that "Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to (the) money or property." 28 U.S.C. § 1335(a) (1). In State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), the Supreme Court interpreted this provision "to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants." Id. at 530, 87 S.Ct. at 1203. Accord, Haynes v. Felder, 239 F.2d at 871; see J. Cound, J. Friedenthal & A. Miller, Civil Procedure 627-28 (2d ed. 1974).
 
 
 18
 The district court found that the parties in this case lack minimal diversity and dismissed the action for want of jurisdiction. It concedes that Alvord, the acting county treasurer for Los Angeles County, was a citizen of California for diversity purposes, citing Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), overruled on other grounds, Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court, however, summarily concluded that the administrators "are certainly not claimants for the purpose of this statutory interpleader action." It then reasoned that the state of Texas rather than the named state taxing officials was the real party in interest in the action, see Craig v. Southern Natural Gas Co., 125 F.2d 66, 67 (5th Cir. 1942), and that a state is not a citizen of itself for diversity purposes, Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). Because the United States is also not a state citizen for purposes of diversity, Kent v. Northern California Regional Office, 497 F.2d 1325, 1327 (9th Cir. 1974); 3A Moore's Federal Practice, supra P 22.09(3), at 22-77, under the district court's analysis, absolutely no diversity exists among the parties. This conclusion provides little consolation to Lummis and the other administrators who are charged in their letters of administration with preserving and protecting the estate's assets, but are confronted with the complete depletion of the estate that may result from the collection of domicile-based death taxes by two different states. The incongruity of such a result is manifest in a case in which scores of interested persons spread over the entire western United States and at least three different sets of government taxing authorities are vying over an enormous sum of money.
 
 
 19
 The controversy in this case is "between each State and the decedent's estate as to the legal obligation to pay death taxes." California v. Texas, 437 U.S. at 611, 98 S.Ct. at 3113 (Stewart, J., concurring). The action is a bill in the nature of interpleader, not a strict bill of interpleader. Id. at 610-11, 98 S.Ct. at 3113. Lummis claims an interest in protecting the assets of the Hughes estate from double death tax liability, and asserts that Hughes was domiciled in Nevada, which has no state death tax. Because of his legal duty of preserving the estate's assets, Lummis is an interested stakeholder, not a disinterested one.[11]
 
 
 20
 This circuit has not decided whether the citizenship of an interested stakeholder may be considered for purposes of establishing the minimal diversity required by section 1335. Boston Old Colony Insurance Co. v. Balbin, 591 F.2d 1040, 1042 n.5 (5th Cir. 1979). In the Treinies decision in 1939, the Supreme Court held that the citizenship of a stakeholder who did not claim any interest in the deposited fund did not destroy diversity for a strict bill of interpleader although the stakeholder and one of the claimants were citizens of the same state. 308 U.S. at 71-72, 60 S.Ct. at 47. The Court did not discuss whether the citizenship of an interested stakeholder similarly is irrelevant for purposes of diversity. A stakeholder who brings a bill in the nature of interpleader asserts a claim to the fund that is adverse to that of the defendant claimants. Because section 1335 requires only that two or more adverse claimants be of diverse citizenship, we hold that the citizenship of an interested stakeholder may be considered for purposes of establishing diversity under section 1335. Accord, Builders & Developers Corp. v. Manassas Iron & Steel Co., 208 F.Supp. 485, 488 (D.Md.1962); see Pan American Fire & Casualty Co. v. Revere, 188 F.Supp. 474, 477 & n.8 (E.D.La.1960).[12]
 
 
 21
 Section 1335 provides that the adverse claimants must be "of diverse citizenship as defined in (28 U.S.C.) section 1332." Under section 1332's diversity rules, as long as the administrator was not named solely for the purpose of creating diversity, Green v. Hale, 433 F.2d 324, 326-31 (5th Cir. 1970), the citizenship of the administrator, rather than that of the decedent or the heirs, controls the question whether the federal court has diversity jurisdiction. Bush v. Carpenter Brothers, Inc., 447 F.2d 707, 710-11 (5th Cir. 1971); Harris v. Johnson, 345 F.Supp. 516, 517 (N.D.Miss.1972). As Hughes' first cousin and one of his prospective heirs, Lummis clearly has more than a nominal interest in the administration of his estate. Therefore, he clearly was not chosen to be the administrator collusively or "joined to invoke the jurisdiction of (the district) court." 28 U.S.C. § 1359. Because the pleadings indicate that Lummis is a citizen of Nevada, he is a claimant whose citizenship is diverse from that of an adverse claimant, Alvord, the acting county treasurer for Los Angeles County and a citizen of California. This satisfies the diversity requirement of section 1335.[13]
 
 
 22
 The California taxing officials argue that the district court erred in failing to join Hughes' prospective heirs as parties under Rule 19 of the Federal Rules of Civil Procedure. Rule 17, however, provides that "(e)very action shall be prosecuted in the name of the real party in interest," and that an "executor, (or) administrator . . . may sue in his own name without joining with him the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). In performing his duty of preserving the assets of the estate imposed by Texas law, see Tex.Prob.Code Ann. §§ 231-33 (Vernon 1980), Lummis is the real party in interest, and the prospective heirs need not be joined. See Proctor v. Gissendaner, 579 F.2d 876, 880 (5th Cir. 1978).
 
 IV
 
 23
 In this case we must decide whether the federal system that has spawned Lummis' dilemma of double taxation provides him with a remedy. California v. Texas, 437 U.S. at 616, 98 S.Ct. at 3116 (Powell, J., concurring) (quoting Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 388 (1940)). We hold that it does.
 
 
 24
 Under the common law of Texas as well as that of California, a decedent has only one domicile for death tax purposes. California v. Texas, 437 U.S. at 603, 98 S.Ct. at 3109 (Stewart, J., concurring); see Texas v. Florida, 306 U.S. at 408, 59 S.Ct. at 568. Because "neither Texas nor California is or will become a party to the proceedings in the other's courts, neither will be bound by an adverse determination of domicile in the other's forum." California v. Texas, 437 U.S. at 603, 98 S.Ct. at 3109. Lummis seeks only a determination that will bind both sets of taxing officials[14] and will thus preserve the estate's assets from either total or near-total depletion. Such a determination, rather than impeding the states in enforcing their laws, would effectively implement their rules that death taxes may be imposed only by a state in which a decedent is domiciled at his death and that a decedent may have only one domicile. The equitable bill in the nature of interpleader, codified in section 1335, enables Lummis to obtain a binding domicile determination from a federal tribunal. We hold that the district court has jurisdiction over Lummis' suit; thus we reverse its dismissal order.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 *
 District Judge of the Southern District of Alabama, sitting by designation
 
 
 [1]
 The Internal Revenue Service estimated that the estate was worth approximately $465,000,000. The California inheritance tax referee valued the estate at $1,106,345,516. The administrators, by contrast, asserted that its value was $166,800,000
 
 
 [2]
 The Texas courts appointed William Rice Lummis and Annette Gano Lummis, Hughes' aunt and Lummis' mother, as temporary co-administrators. Annette Gano Lummis died and her powers vested in Lummis. In Delaware and Louisiana, Lummis was appointed administrator. Richard Gano was appointed administrator in California. The First National Bank of Nevada was originally appointed administrator in Nevada, but Lummis was subsequently named co-administrator
 
 
 [3]
 Each state seeks to tax the estate's tangible assets located within its borders and all of its intangible property
 Tangible personal property and realty are constitutionally subject to taxation only at the place of situs. See Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194 (26 S.Ct. 36, 50 L.Ed. 150); City Bank Farmers Trust Co. v. Schnader, 293 U.S. 112 (55 S.Ct. 29, 79 L.Ed. 228) . . . (I)ntangible personal property may, at least theoretically, be taxed only at the place of the owner's domicile. First Nat. Bank v. Maine, 284 U.S. 312 (52 S.Ct. 174, 76 L.Ed. 313).
 California v. Texas, 437 U.S. at 602 n.1, 98 S.Ct. at 3108 n.1 (Stewart, J., concurring).
 
 
 [4]
 Lummis asserts that assuming Texas and the Internal Revenue Service will use the Internal Revenue Service valuation of the estate and that California will use its own valuation, see note 1 supra, the estate will be liable for $763,400,000 in estate taxes. This assertion is based on the supposition that the Internal Revenue Service will assess estate taxes at the applicable marginal rate of 77 percent minus 16 percent state death tax credit, that Texas will assess at the applicable rate of 16 percent, and that California will assess at its applicable rate of 24 percent
 
 
 [5]
 The California taxing officials also argue that the district court erred in denying its motion to transfer venue to the District of Colorado under 28 U.S.C. § 1404(a). We find, however, that the court did not abuse its discretion in denying the transfer of venue motion. See Marbury-Pattillo Constr. Co. v. Bayside Warehouse Co., 490 F.2d 155, 158 (5th Cir. 1974); see generally Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)
 
 
 [6]
 Because the modern statutory remedy of section 1335 is equitable in origin and remedial in nature, courts must construe it liberally "so as not to result in injustice." Austin v. Texas-Ohio Gas Co., 218 F.2d 739, 746 (5th Cir. 1955); Aetna Cas. & Sur. Co. v. Ahrens, 414 F.Supp. 1235, 1254 (S.D. Tex. 1975)
 
 
 [7]
 Other parts of this Act were codified at 28 U.S.C. §§ 1397, 2361. Section 1335 provides,
 (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
 (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
 (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.
 
 
 [8]
 See Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 970-71 (1936); S.Rep. No. 558, 74th Cong., 1st Sess. 1, 4-5 (1935)
 
 
 [9]
 The eleventh amendment limits judicial power as follows:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one on the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [10]
 Although the district court acknowledged that "the Eleventh Amendment bar may have been removed by Edelman," nevertheless it found that "the Worcester court's finding that the acts of the state taxing officials were not unconstitutional" precluded Lummis' suit
 
 
 [11]
 In addition, the result of our decision is that the district court will determine Hughes' domicile at death, which will resolve where his intangible property will be administered. In turn, that will determine which administrators will and which will not receive the statutory fee for administering Hughes' intangible property. That fee may well amount to tens of millions of dollars. Because this lawsuit will influence their entitlement to that administration fee, the various administrators are interested parties
 
 
 [12]
 Professors Wright and Miller note,
 The declining importance of the classic limitations on interpleader and the acceptance of jurisdiction based on minimal diversity under the statute are evidence of a trend toward the broadest availability of interpleader relief that has been underway since the adoption of the federal rules. Allowing statutory interpleader (when the defendant claimants are citizens of the same state, but an interested stakeholder is diverse,) would be consistent with that trend.
 
 
 [7]
 C. Wright & A. Miller, supra § 1710, at 406 (footnote omitted). But see 3A Moore's Federal Practice, supra P 22.09(1)
 
 
 [13]
 The only administrator whose citizenship differs from that of Lummis is Richard Gano, the California administrator. Because only minimal diversity is required, we find that Gano's California citizenship will not deprive the district court of jurisdiction under section 1335. See State Farm Fire & Cas. Co. v. Tashire, 386 U.S. at 530, 87 S.Ct. at 1203
 
 
 [14]
 Lummis also seeks a declaration of Hughes' domicile for federal estate tax purposes. The United States, however, asserts that such a declaration is barred by 28 U.S.C. § 2201. Section 2201 enables federal courts to "declare the rights and other legal relations of any interested party" in actual controversies within its jurisdiction "except with respect to Federal taxes." See California v. Texas, 437 U.S. at 609 n.10, 98 S.Ct. at 3112 n.10 (Stewart, J., concurring). The district court's determination that it lacked diversity jurisdiction caused it to dismiss the case as to all parties and claims, and it did not reach the United States' contentions. Generally, "a reviewing court should remand a case to the district court for consideration of a question not previously considered there . . . ." Boire v. Miami Herald Publishing Co., 343 F.2d 17, 25 (5th Cir.), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965). Accord, Connolly v. Pension Benefit Guaranty Corp., 581 F.2d 729, 734-35 (9th Cir. 1978), cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). We therefore decline to consider this issue until the district court has decided it on remand