**CONNECTICUT GENERAL LIFE IN-SURANCE COMPANY, Plaintiff–Counterdefendant,**

v.

**Anton WERMELINGER, as Trustee for the Estate of Raul Quevedo, as Trustee for Unknown Beneficiaries, as Executor of the Estate of Raul Quevedo, as Assignee of Francisco Quevedo and Catalina Quevedo, Defendant–Counterplaintiff,**

and

**Francisco Quevedo and Catalina Quevedo, Defendants.**

Civ. A. No. 3:95–CV–1910–D.

United States District Court,
N.D. Texas,
Dallas Division.

July 26, 1996.

**194**

James L. Johnson, Dallas, TX for plaintiff-counterdefendant.

Lee Taft, Dallas, TX, for defendant-counterplaintiff.

FITZWATER, District Judge:

This hybrid interpleader-declaratory judgment action presents questions concerning diversity jurisdiction where potential, unnamed trust beneficiaries are alleged to be claimants to the interpleaded stake. The court must also address its discretion to dismiss a declaratory judgment claim that essentially is but another form of the Fed. R.Civ.P. 22 interpleader action. Concluding that it lacks diversity jurisdiction with respect to the interpleader action, and that it should not entertain the declaratory judgment claim, the court dismisses this case without prejudice.

I

Decedent Raul Quevedo ("Quevedo") purchased a group life insurance policy (the "Policy") through his employer. In 1978 Quevedo designated the Policy beneficiary as defendant-counterplaintiff Anton Wermelinger ("Wermelinger"), identifying Wermelinger's relationship to him as "Godfather." In 1988 Quevedo designated the Policy beneficiary as "Anton Wermelinger–Trustee."

Quevedo died in 1995. His parents, Francisco and Catalina Quevedo, survived him, as did Wermelinger, who was named as sole beneficiary of Quevedo's will, and appointed independent executor of his estate.

Upon Quevedo's death, plaintiff-counterdefendant Connecticut General Life Insurance Company ("Connecticut General"), with whom Quevedo's employer then had group life insurance, became obligated to pay Policy life insurance benefits of $110,000, together with the sum of $740 in a cash value account. Wermelinger submitted a life insurance claim statement. The form asked the question, "In what capacity are you making this claim?" Wermelinger responded, "Beneficiary—No Trust Agreement Exists." Quevedo's parents have assigned to Wermelinger any claim they may have to these sums.

Connecticut General filed an interpleader action in this court, alleging that payment of the Policy benefits might subject it to multiple liability. In its complaint,[1] Connecticut General also asks the court to issue a declaratory judgment concerning who is the rightful recipient of the Policy benefits.

Connecticut General maintains that it is subject to multiple liability because if the designation "Anton Wermelinger–Trustee" is merely descriptive, Wermelinger is a beneficiary in his individual capacity. Compl. at ¶ 13. But if this designation refers to a trust in favor of someone other than Wermelinger, the term "Trustee" could refer to the relationship between Wermelinger and Quevedo, whereby Wermelinger would be trustee for Quevedo or, upon Quevedo's death, his estate. Id. at ¶ 14. Or, "Trustee" could describe "a trust for which the trust beneficiary simply cannot be determined from the face of the beneficiary designation form." Id. at ¶ 15. Connecticut General also alleges that if the designation "Anton Wermelinger–Trustee." is interpreted as a designation of Wermelinger as trustee for Quevedo or, upon Quevedo's death, his estate, or as trustee for one or more beneficiaries not named in the beneficiary designation form, Wermelinger's response in the claim statement that "No Trust Agreement Exists" may constitute a repudiation of any right Wermelinger may have to claim the benefits as a trustee. Id.

---

1. The operative pleading is plaintiff's second amended complaint for interpleader, filed November 7, 1995. For clarity, the court refers to this document as the "complaint."

at ¶ 16. Connecticut General contends as well that if Quevedo's 1988 beneficiary designation fails due to the absence of a identification for a trustee beneficiary, the Policy benefits could be payable to Quevedo's heirs or estate, *id.* at ¶¶ 17–20; it could be deemed a nullity, thus leaving in effect his 1978 designation of Wermelinger, *id.* at ¶ 21; or a resulting trust could be imposed by operation of Texas law in favor of Quevedo's estate, *id.* at ¶ 22.

Connecticut General contends the following persons or entities may be entitled to receive payment of all or part of the Policy benefits: Wermelinger individually; the estate of Quevedo, either through Wermelinger as trustee or as executor, or through another representative to be appointed by reason of Wermelinger's making an individual claim to the Policy benefits; one or more unnamed beneficiaries, either through Wermelinger as trustee, or through another representative to be appointed by reason of Wermelinger's making an individual claim to the Policy benefits; Wermelinger in his capacity as assignee of Quevedo's parents; Francisco Quevedo; and/or Catalina Quevedo. *Id.* at ¶ 23.

Connecticut General requests that the court discharge it from liability to Wermelinger individually; Wermelinger in his capacity as trustee for the estate of Quevedo; Wermelinger in his capacity as trustee for a beneficiary or beneficiaries not identified in the Policy beneficiary designation form; Wermelinger in his capacity as executor of estate of Quevedo; Wermelinger in his capacity as assignee of Francisco Quevedo and Catalina Quevedo; Francisco Quevedo; and Catalina Quevedo. *Id.* at ¶ 24. Wermelinger has filed a counterclaim to recover the Policy benefits.

Connecticut General moved the court to appoint a guardian ad litem to protect the interests of potential trust beneficiaries. Wermelinger moved for summary judgment or dismissal, contending the court lacked subject matter jurisdiction to consider Con-

necticut General's interpleader action. The court granted Connecticut General a period of time in which to conduct discovery and establish the court's jurisdiction.

Connecticut General has now submitted supplemental briefing. In the event the court determines there is subject matter jurisdiction, Wermelinger reurges his motion to dismiss or for summary judgment. Wermelinger contends that Connecticut General cannot establish the requisite adversity for an interpleader action because payment under all scenarios should be made to him, either individually or in his capacity as trustee. He also alleges that he is entitled to the Policy proceeds upon dismissal of this lawsuit.

## II

Connecticut General brings this interpleader action pursuant to Rule 22,[2] and invokes this court's jurisdiction on the basis of diversity of citizenship between Wermelinger and itself.

### A

■ Connecticut General has the burden of demonstrating subject matter jurisdiction. *See, e.g., Epps v. Bexar–Medina–Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594, 595 (5th Cir.1982) (party invoking federal subject matter jurisdiction has burden of pleading and proving it). Additionally, the court is obligated to monitor jurisdictional issues, and must, *sua sponte* if necessary, raise questions affecting its subject matter jurisdiction.

■ An interpleader action brought pursuant to 28 U.S.C. § 1335 enjoys liberal procedural rules compared to a Rule 22 interpleader action. In relevant part, a § 1335 interpleader action requires only minimal diversity among the claimants. *Lummis v. White,* 629 F.2d 397, 400 (5th Cir.1980), *rev'd on other grounds sub nom. Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694

---

**2.** In its complaint, Connecticut General relies upon 28 U.S.C. § 1335 to establish jurisdiction, but it now recognizes that "the use of section 1335 would no longer be the appropriate interpleader vehicle" because Quevedo's parents have explicitly relinquished any potential claims. *See*

P. Br. at 3. Instead, Connecticut General contends that "the amended complaint is sufficient to state a claim for interpleader under Rule 22 … within this Court's diversity jurisdiction." *Id.*

(1982). Rule 22 does not provide an independent jurisdictional basis, however, and an interpleader plaintiff must therefore establish federal question jurisdiction or complete diversity of citizenship. *Id.* at 400–01; *6247 Atlas Corp. v. Marine Ins. Co.*, 155 F.R.D. 454, 465 (S.D.N.Y.1994). An interpleader action requires the existence of two or more adverse claims to an identifiable fund. *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582 (5th Cir.1968). The stakeholder acts as the plaintiff, and there must be complete diversity between the stakeholder, on the one hand, and every defendant-claimant, on the other hand. *Travelers Ins. Co. v. First Nat'l Bank*, 675 F.2d 633, 637 n. 9 (5th Cir.1982). Because Connecticut General bases its interpleader action on diversity jurisdiction, it must establish complete diversity between itself and each interpleader claimant. The court therefore rejects Connecticut General's attempt to establish jurisdiction only on the basis of complete diversity between Wermelinger and itself.

### B

■ The court now determines whether Connecticut General's citizenship is diverse from that of each adverse claimant. The court holds that it is not, because the presence of Wermelinger as a claimant for one or more unidentified trust beneficiaries precludes a showing of complete diversity.

■ Connecticut General maintains that it is subject to multiple liability because *inter alia* there could be "a trust for which the trust beneficiary simply cannot be determined from the face of the beneficiary designation form," and Wermelinger could be the trustee for one or more trust beneficiaries. One of the capacities in which Connecticut General sues Wermelinger is that of trustee for these indeterminate beneficiaries. Connecticut General has in essence brought an action against unknown-unnamed defendants.

The presence of such defendants destroys complete diversity. *See John Hancock Mut. Life Ins. Co. v. Central Nat'l Bank*, 555 F.Supp. 1026, 1027 (N.D.Ill.1983) ("It is tautological to say plaintiff cannot demonstrate 'unknown owners and non-record claimants' are citizens of a state other than plaintiff's.").[3]

■ Although Connecticut General seeks to discharge any liability to these unknown beneficiaries by suing Wermelinger in his capacity as their trustee, Connecticut General cannot establish diversity on the basis of Wermelinger's citizenship alone. A trustee's citizenship controls the determination of diversity when he is the real party in interest. *See Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 464–65, 100 S.Ct. 1779, 1783–84, 64 L.Ed.2d 425 (1980). Connecticut General does not contend that Wermelinger is such a party. In fact, in its motion for appointment of a guardian ad litem, it asks the court to appoint a representative for these unnamed beneficiaries for the very reason that Wermelinger cannot represent them due to a conflict between his role as their trustee and as an individual who claims the right to the Policy benefits. *See* Mot.Appt.Guardian at 2. As Connecticut General states in the motion:

> The Court will accordingly need to appoint a guardian ad litem to represent the interests of the trust and any beneficiaries that Raul Quevedo may have intended to ultimately receive the benefits for which Wermelinger was named trustee, on account of the conflict of interest between Wermelinger and the trust and trust beneficiaries.

*Id.* at 4; *see id.* at 7–8 (urging that "The duties of such a guardian ad litem would be, in the first instance, to ensure that the interests of the trust are adequately represented on the initial question of whether Raul Quevedo created a trust, and the secondary ques-

---

3. This rule is unaffected by the amendment to 28 U.S.C. § 1441(a) that provides that the citizenship of defendants sued under fictitious names shall be disregarded when determining removal jurisdiction.

    In the removal situation, the provision prevents a plaintiff from blocking a defendant's access to federal courts by injecting unidenti-

fied or nonexistent parties.... By contrast, it is entirely within a plaintiff's control to determine how his, her or its complaint will be framed for purposes of seeking original recourse to the federal court system.

*Source One Mtg. Servs. Corp. v. Sledge*, 1993 WL 78773, at *1 n. 2 (N.D.Ill. March 17, 1993).

tion of the beneficiary or beneficiaries of such trust.").

It therefore follows that Connecticut General cannot establish complete diversity, because there are potential trust beneficiaries who are competing claimants to the interpleaded stake, and whose citizenship cannot be deemed diverse from that of Connecticut General's.

## III

■ Connecticut General contends that even if the court lacks jurisdiction over the interpleader action, it may exercise jurisdiction over the declaratory judgment claim.

Although Connecticut General has cast its complaint almost exclusively as one for interpleader, the complaint does include a request "that the Court declare the proper recipient or recipients of the subject insurance benefits." Compl. at ¶ 7. Connecticut General is a Connecticut corporation with its principal place of business in Connecticut, and therefore is a citizen only of Connecticut. Wermelinger is a Texas citizen. Connecticut General has thus established diversity jurisdiction with respect to its declaratory judgment action against Wermelinger.

## IV

■ Because the court has jurisdiction over the declaratory judgment claim, the question presented is whether the court may adjudicate the interpleader action pursuant to its supplemental jurisdiction.

## A

28 U.S.C. § 1367(a) provides, in pertinent part:

> Except as provided in subsections (b) and (c) ... the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(b) [4] places limitations on the exercise of supplemental jurisdiction in certain cases, but does not refer explicitly to Rule 22.

■ One court has rejected the proposition that § 1367(b) applies to Rule 22. In *6247 Atlas Corp.* the court addressed an interpleader action with a common fund worth an aggregate $3.1 million, but that involved several individual claims of less than the jurisdictional prerequisite of $50,000. The court held that it had jurisdiction over all claims because the aggregate amount exceeded $50,000. *6247 Atlas Corp.*, 155 F.R.D. at 464–65. The court held that "§ 1367 may not be ... used to limit the scope of Rule 22." *Id.* at 465 n. 7. Although the text of Rule 22 refers to itself as a "supplement" to Rule 20,[5] the court held that the reference in § 1367(b) to Rule 20 does not incorporate Rule 22. *Id.* The court agrees with this reasoning, and therefore holds that a declaratory judgment action within the court's jurisdiction may serve as the touchstone for exercising supplemental jurisdiction over a Rule 22 interpleader claim that lacks its own jurisdictional predicate.

## B

■ In order to exercise supplemental jurisdiction over the interpleader claim, however, the court must decide as a matter of its discretion that it will hear the declaratory judgment action.

### 1

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "any court of

---

4. 28 U.S.C. § 1367(b):

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

5. Rule 22(1) states, in relevant part:

> The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party...." (Emphasis added). The Act is an authorization instead of a command. *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962). It therefore confers unique and substantial discretion upon federal courts in deciding whether to declare the rights of litigants. *Wilton v. Seven Falls Co.*, ⸺ U.S. ⸺, ⸺, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). District courts are entitled to dismiss or stay an action under the Declaratory Judgment Act at any point in the proceedings, *id.* at ⸺, 115 S.Ct. at 2143, and such decisions are reviewed under an abuse of discretion standard. *Id.* at ⸺, 115 S.Ct. at 2144. Although "the district court's discretion is broad, it is not unfettered." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir.1994) (quoting *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir.1993)). The court cannot dismiss a declaratory judgment action "on the basis of whim or personal disinclination." *Id.* (quoting *Travelers*, 996 F.2d at 778).[6]

### 2

In the instant case, Connecticut General's declaratory judgment action represents but another form of its interpleader claim. *See* Compl. at 7.[7] The request is undoubtedly presented through a less desirable mechanism that lacks the benefits that an interpleader action confers upon an innocent stakeholder. *See Lummis*, 629 F.2d at 399 ("Interpleader enables a person holding a fund to compel persons asserting conflicting claims to that fund to adjudicate their rights to the fund in a single action."); *Blackmon Auctions, Inc. v. Van Buren Truck Ctr., Inc.*,

901 F.Supp. 287, 289 (W.D.Ark.1995) ("The device of interpleader allows the stakeholder to put money or other property in dispute into the court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court."). Nevertheless, it is still a petition asking that the court declare to whom Connecticut General should pay the Policy benefits. The declaratory judgment action therefore serves in the present case as nothing more than a jurisdictional bootstrap for an interpleader claim that could not otherwise be maintained in this court.

If the court opts to exercise jurisdiction over Connecticut General's declaratory judgment claim, it could unintentionally invite litigants to manufacture diversity jurisdiction where none exists. For example, a plaintiff who hoped to interplead nondiverse claimants could file a corresponding declaratory judgment action against a single diverse party. The interpleader action would provide the desired relief of a total discharge, whereas the declaratory judgment claim would bind only the diverse claimant. The request for a declaratory judgment would essentially function only as a basis for conferring jurisdiction.

The court therefore declines in its discretion to exercise jurisdiction over Connecticut General's declaratory judgment action where, as here, that claim simply serves as a mechanism for creating supplemental jurisdiction over an interpleader action that represents the principal relief sought.

\*　　\*　　\*　　\*　　\*　　\*

Connecticut General has failed to establish a jurisdictional basis for its Rule 22 interpleader claim. The court declines in its discretion to adjudicate the declaratory

---

**6.** The Fifth Circuit has established certain factors to guide the district court's decision whether to dismiss a declaratory judgment action. The court may consider whether (1) there is a pending state action in which all of the matters in controversy may be fully litigated; (2) plaintiff filed suit in anticipation of a lawsuit filed by defendant; (3) plaintiff engaged in forum-shopping in bringing the action; (4) possible inequities exist in allowing plaintiff to maintain the action; (5) federal court is a convenient forum for parties and witnesses; (6) retaining the law-

suit in federal court would further judicial economy; and (7) the federal court must construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the parties is pending. *Id.* at 590–91.

**7.** Because this is the sole reference in the complaint to a declaratory judgment, it is clear that the Declaratory Judgment Act claim is essentially an iteration of the interpleader action.

judgment action. Accordingly, the court dismisses this lawsuit without prejudice, in part for lack of subject matter jurisdiction, and in part as a matter of its discretion.[8]

**SO ORDERED.**

---

8. Wermelinger contends that "in those cases in which general subject jurisdiction has attached, but not interpleader subject jurisdiction, the Court's Order of Dismissal is coupled with a decree awarding title to the interpleaded funds." D.Resp. & Mot. at 8. Given the basis for the court's dismissal order, it declines to address Wermelinger's claim to the disputed funds.