**ALFA FINANCIAL CORPORATION, an Alabama Corporation; and Alfa Life Insurance Corporation, an Alabama Corporation, Plaintiffs,**

v.

**Kenneth A. KEY; William L. & Stacie Stufflebeme; Johnny Pippin; Katrina Faulk; Sammy Lee Haynes; Malcolm Spivey; James L. Marchand; Roxanne F. Anthony; W.H. Taylor, Jr.; Richard Woods; and Margaret Woods, Defendants.**

No. CV–95–A–1373–E.

United States District Court,
M.D. Alabama,
Eastern Division.

May 17, 1996.

Algert S. Agricola, Jr., Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery, AL, Robert William Bradford, Jr., Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, Albert L. Jordan, Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL, for ALFA Financial Corporation, ALFA LIFE Insurance Corporation.

Garve Ivey, Jr., King, Ivey & Junkin, Jasper, AL, for Kenneth A. Key, William L. Stufflebeme, Stacie Stufflebeme.

Christian Edward Roberson, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Donald P. McKenna, Jr., Taylor & Taylor, Birmingham, AL, for Johnny Pippin, Katrina Faulk, Sammy Lee Haynes, Malcolm Spivey.

James L. Marchand, Navarre, FL, pro se.

Roxanne F. Anthony, Weldon, NC, pro se.

Debbie Lindsey Jared, Elba, AL, Jeffrey Wayne Kelley, Lindsey & Kelley, Elba, AL, for W.H. Taylor, Jr.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

This cause is before the court on three Motions to Dismiss. The first Motion to Dismiss was filed by the Defendants, Kenneth A. Key ("Key"), and William L. and Stacie Stufflebeme (the "Stufflebemes"), on November 15, 1995. The second Motion to Dismiss was filed by the Defendants, Johnny Pippin ("Pippin"), Katrina Faulk ("Faulk"), Sammy Lee Haynes ("Haynes"), and Malcolm Spivey ("Spivey"), on November 17,

1995. The third Motion to Dismiss was filed by the Defendant, William H. Taylor ("Taylor"), on January 16, 1996.

## I. *FACTS*

This suit arises from the efforts of the Plaintiffs, Alfa Financial Corporation ("Alfa Financial") and Alfa Life Insurance Corporation ("Alfa Life") (together "the Alfas"), to put an end to litigation in the state courts of Alabama resulting from their alleged fraudulent pattern and practice in making loans. The Alfas brought this action on October 23, 1995 seeking declaratory relief and relief in the nature of interpleader. They contend that the purpose of the action is to protect themselves from multiple and vexatious suits seeking punitive damages as a result of an alleged fraudulent pattern and practice of unlawfully requiring Alfa Financial loan customers to purchase life insurance or credit life insurance from Alfa Life as a condition to obtaining a loan ("the alleged fraudulent pattern and practice").

The events underlying this law suit began on February 23, 1994, when Eddie and Mary Catherine Christ filed suit against the Alfas in the Circuit Court for Barbour County, Alabama. *See Christ v. Alfa Life Ins. Corp.,* No. CV–94–022 (Ala.Cir.Ct. (Barbour Cty.) Feb. 23, 1994). They alleged that the Alfas defrauded them by requiring them to purchase life insurance from Alfa Life and to assign the proceeds to Alfa Financial as a condition to obtaining a loan. In their suit, they sought unspecified compensatory and punitive damages. In the ensuing months, thirty seven additional civil actions were filed against the Alfas in the Circuit Court for Barbour County and other Alabama state courts alleging the same fraudulent pattern and practice.

On the eve of the *Christ* trial, the parties to all of the pending cases involving the alleged fraudulent pattern and practice informed the Barbour County court that they had tentatively reached a settlement (the "*Christ* settlement"). The terms of the settlement required the Alfas to pay $4.1 million to the plaintiffs in 41 cases, 37 of which included claims involving the alleged fraudulent pattern and practice. $3.4 million of the settlement amount was earmarked to satisfy the claims involving the alleged fraudulent pattern and practice. Approximately 90% of the payment was designated as punitive damages. The Alfas did not admit liability, and they contend that they agreed to the settlement to avoid the risk and expense of protracted litigation and to eliminate their exposure to punitive damages for the alleged fraudulent pattern and practice.

At the same time, the Alfas submitted a motion requesting that the Barbour County court hold a *Hammond* hearing to determine whether the settlement amount for punitive damages was sufficient to punish them adequately for their alleged illegal fraudulent pattern and practice. *See* Ala.Code § 6–11–23; *Green Oil Co. v. Hornsby,* 539 So.2d 218 (Ala.1989); *Hammond v. City of Gadsden,* 493 So.2d 1374 (Ala.1986). On February 6, 1995, the *Hammond* hearing was held, and the Alfas presented evidence relating to the adequacy of the punitive damage award. In ruling on the motion, the court assumed that the Alfas were guilty of the alleged fraudulent pattern and practice. *See Christ v. Alfa Life Ins. Corp.,* No. CV–94–022 (Ala.Cir.Ct. (Barbour Cty.) Feb. 6, 1995) (order setting forth *Hammond* hearing findings). After the hearing was concluded, the Barbour County court entered an order finding that:

This court is firmly convinced that payment of the amounts which Alfa Life and Alfa Financial have either paid or agreed to pay, as well as its other costs incurred, is sufficient to punish Alfa Life and Alfa Financial for the alleged intent, scheme, and pattern and practice of wrongful conduct set forth above and to deter Alfa Life, Alfa Financial, and others from any similar misconduct in the future.... The court further concludes that the imposition of additional punitive damages against Alfa Life and/or Alfa Financial for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid in the settlements mentioned above, whether in this case or any other proceeding, would constitute duplicative, multiple, and unjust punishment.

*Id.* at 7–8.

Sometime after the *Christ* settlement was reached, the Alfas became aware of other individuals who claimed or could claim that they are entitled to awards of punitive damages against the Alfas arising out of the

alleged fraudulent pattern and practice. The Alfas allege that the Defendant Key filed a civil action against them in Walker County, Alabama, seeking punitive damages based on the alleged fraudulent pattern and practice and purporting to represent a class of approximately 10,000 persons. The Alfas also allege that the Stufflebemes brought a counterclaim against them in a law suit in Walker County, Alabama, seeking punitive damages based on the alleged fraudulent pattern and practice. Additionally, the Alfas allege that the Defendants, Pippin, Faulk, Haynes, and Spivey, filed civil actions against them in Barbour County, Alabama; that the Defendant Taylor filed a civil action against them in Coffee County, Alabama; and that the Defendants, Richard and Margaret Woods (the "Woods"), filed a civil action against them in Marion County, Alabama. The Alfas allege that all of these Defendants seek punitive damages based on the alleged fraudulent pattern and practice. Finally, the Alfas allege that the Defendants, James L. Marchand ("Marchand") and Roxanne F. Anthony ("Anthony"), also claim or may claim to be entitled to awards of punitive damages based on the alleged fraudulent pattern and practice.

The Alfas filed this suit on October 23, 1995 in the Middle District of Alabama seeking to protect themselves from further punitive damage awards based on the alleged fraudulent pattern and practice. They predicate this court's jurisdiction upon the federal interpleader statute, 28 U.S.C. § 1335, and upon 28 U.S.C. § 1331.

The Alfas contend that, based on the *Hammond* order entered by the Alabama Circuit Court for Barbour County in the *Christ* case, they are no longer subject to liability for punitive damages arising from the alleged fraudulent pattern and practice. They also contend that additional awards of punitive damages against them would violate the United States Constitution and the Constitution of the State of Alabama. In the alternative, they contend that, if punitive damages can still be awarded against them, any further awards cannot exceed a total of $100,000. At the time the Alfas filed their Complaint in this suit, they paid $100,000 into this court. They give no explanation, however, for how they arrived at $100,000 as the extent of their liability.

The Alfas claim that this is an action in the nature of interpleader because their liability for punitive damages based on the alleged fraudulent pattern and practice is limited to a fixed stake. They claim that they already paid the full stake over to the plaintiffs involved in the *Christ* settlement. Accordingly, they claim that they may no longer be subjected to liability for punitive damages and that the $100,000 they paid into the court should be returned to them. They also seek a declaration from this court that additional awards of punitive damages are prohibited and a declaration that the Defendants' claims for punitive damages are unconstitutional under the Constitution of the United States and under the Constitution of the State of Alabama. In the alternative, they seek a resolution of the conflicting claims of the Defendants and they seek a declaration that additional awards for punitive damages cannot exceed a total of $100,000.

On November 15, 1995, the Defendants, Key and the Stufflebemes, filed a motion to dismiss. They argue that the Plaintiffs' claims must be dismissed because no real case or controversy exists between the parties; because this action should be dismissed in favor of prior pending actions; because this suit cannot be brought under the federal interpleader statute; and because equity is a bar to this action.

On November 17, 1995, the Defendants, Pippin, Faulk, Haynes, and Spivey, filed a motion to dismiss. They argue that the Plaintiffs' claims must be dismissed because equity is a bar to this action; because this action violates the Defendants' constitutional right to a trial by jury; and because this action exceeds the powers granted to this court under the interpleader statute. On January 16, 1996, the Defendant, Taylor, filed a motion to dismiss adopting these arguments.

For the following reasons, the Defendants' Motions to Dismiss are due to be GRANTED.

## II. *LEGAL STANDARD ON MOTION TO DISMISS*

A court may dismiss a complaint if it is clear that no relief could be granted

under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 703 (11th Cir.1985), the Plaintiff in this case has not made the allegations necessary to allow the claims in this suit to proceed.

## III. *DISCUSSION*

The Defendants advance a variety of arguments in support of their Motions to Dismiss, including a challenge to this court's subject matter jurisdiction over this suit. Their challenge to subject matter jurisdiction must be dealt with first because it calls into question the very power of this court to determine the substantive issues placed before it.

### A. *Interpleader Jurisdiction*

In their Complaint, the Plaintiffs allege that this court's subject matter jurisdiction derives from the federal interpleader statute. *See* 28 U.S.C. § 1335(a). The federal interpleader statute is an independent grant of jurisdiction in the federal district courts where there are adverse claimants or potential claimants of diverse citizenship [1] to a stake of at least $500. *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). The statute allows the party holding the stake to compel persons who assert or may assert conflicting claims to the stake to adjudicate

their rights in federal court in a single action. *See Lummis v. White,* 629 F.2d 397, 399 (5th Cir.1980) [2], *rev'd on other grounds sub nom. Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982). Under the statute, the party seeking interpleader must be in possession of the stake and must deposit it into the court or give bond with sufficient surety. *See* 28 U.S.C. § 1335(a); *General Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 57 (10th Cir.1977). The statute permits the stakeholder to maintain an interest in the outcome of the action and to deny liability when it deposits the contested stake into the court. *Aetna Casualty & Surety Co. v. Ahrens,* 414 F.Supp. 1235, 1244 (S.D.Tex.1975). This is known as an action in the nature of interpleader.

The federal interpleader statute is intended to enable a party seeking interpleader to avoid double vexation on a single liability resulting from adverse claims on the stake it holds. *Tashire,* 386 U.S. at 534, 87 S.Ct. at 1205 ("[I]nterpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation."); *Lummis,* 629 F.2d at 400; *see also Indianapolis Colts v. Mayor & City Council of Baltimore,* 733 F.2d 484, 486 (7th Cir.1984), *cert. denied* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985) ("The historical and still the primary purpose of interpleader is to enable a neutral stakeholder . . . to shield itself from liability for paying over the stake to the wrong party."); *Farmers Elevator Mutual Ins. Co. v. Jewett,* 394 F.2d 896, 898 (10th Cir.1968); *Interfirst Bank v. Purolator Courier Corp.,* 608 F.Supp. 351, 353 (N.D.Tex.1985); 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1701 (1986) (hereinafter *Wright & Miller* ). As a remedy, interpleader developed in equity and is governed by equitable principles. *Lummis,* 629 F.2d at 399. A party seeking interpleader bears the burden of demonstrating that he is enti-

---

1. Because this case is dismissed on other grounds, the court will not discuss the contentions of the parties regarding diversity, including allegations of fraudulent joinder and residence of potential claimants.

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

tled to it. *Dunbar v. United States,* 502 F.2d 506, 511 (5th Cir.1974); *Interfirst,* 608 F.Supp. at 353.

In this case, the Plaintiffs have not fully demonstrated that they are entitled to interpleader. Although they properly allege most of the formal jurisdictional requirements of the statute in their Complaint, they have not shown that they are faced with the possibility of double vexation directed at the same fund. *See Indianapolis Colts,* 733 F.2d at 486 ("It is necessary to decide 'whether the stakeholder legitimately fears multiple vexation directed at a single fund.' ") (quoting 7 *Wright & Miller,* Federal Practice & Procedure § 1704 (1972)). Although the interpleader statute does not explicitly require a showing of the threat of double vexation, it would be inconsistent with the purpose of the statute for this court to recognize jurisdiction without such a showing. The absence of a threat of double vexation is evident from a detailed examination of the facts and circumstances surrounding this case.

The Plaintiffs contend that they are confronted by a threat of double vexation because they have paid the legal limits of their liability for punitive damages based on the alleged fraudulent pattern and practice, but they are still faced with the possibility of further punitive damage awards against them. They claim that their liability is limited in two ways—by the *Hammond* order of the Circuit Court for Barbour County in the *Christ* case and by the United States Constitution and the Constitution of the State of Alabama. Furthermore, they claim that, despite the limited liability, all of the Defendants in this suit either claim or could claim that they are entitled to awards of punitive damages and that, should any Defendant obtain a judgment against them for punitive damages, it would constitute double vexation on the same fund.

The Plaintiffs, however, fail to characterize accurately the effect of the *Hammond* order from the *Christ* case. In the *Hammond* order, the *Christ* court declared that the imposition in any other proceeding of additional punitive damages against the Alfas for the alleged fraudulent pattern and practice in excess of the amount already paid would constitute duplicative, multiple, and unjust punishment. The Plaintiffs contend that the order precludes the Defendants in this case from litigating their claims for punitive damages because it conclusively caps the Plaintiffs' liability for punitive damages. In effect, the Plaintiffs argue that the *Hammond* order constitutes *res judicata* on the issue of punitive damages as to any subsequent party. The doctrine of *res judicata,* however, applies only to the parties, or those in privity with the parties, to the suit in which the judgment was rendered. *See Thomas v. Lynn,* 620 So.2d 615, 617 (Ala.1993) (no *res judicata* where parties before the court "were not party to, nor were they in privity with the parties to, the previous action."). Accordingly, although it is possible that additional punitive damages in excess of the amount already paid by the Alfas would constitute duplicative, multiple, and unjust punishment, the declaration of the *Christ* court cannot preclude the Defendants in this action from litigating the issue.

The Plaintiffs also argue that their liability for punitive damages based on the alleged fraudulent pattern and practice is limited by the United States Constitution and the Constitution of the State of Alabama to a maximum of $100,000 beyond the amount they have already paid in the *Christ* settlement. Although the Plaintiffs' argument is inventive, it fails to acknowledge that trial courts universally provide procedures to protect civil defendants from excessive punitive damages awards and that these procedures are available to the Plaintiffs in any subsequent civil action based on the alleged fraudulent pattern and practice. Such procedures are required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution which imposes a limit on punitive damage awards. *See Honda Motor Co. v. Oberg,* —— U.S. ——, ——, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994); *TXO Prod. Corp. v. Alliance Resources, Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991). Furthermore, these procedures are guaranteed by the Constitution of the State of Alabama. *See Fra-*

*ser v. Reynolds,* 588 So.2d 448, 451 (Ala.1991) ("When a verdict is unconstitutionally excessive, the trial court, or this court, if the trial court refuses to act, must reduce the amount of the verdict...."); *see also Green Oil Co. v. Hornsby,* 539 So.2d 218, 221–222 (Ala.1989) (describing when a verdict is flawed under the Alabama Constitution); *Hammond v. City of Gadsden,* 493 So.2d 1374, 1378 (Ala. 1986) (same). Even at common law, a jury's award of punitive damages was subsequently reviewed by trial and appellate courts to ensure that it was reasonable. *See Haslip,* 499 U.S. at 15, 111 S.Ct. at 1041; *see also Honda Motor Co.,* — U.S. at —, 114 S.Ct. at 2335 ("Judicial review of the size of punitive damage awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded.").

 In the State of Alabama, a civil defendant has the right to request a post-verdict *Hammond* hearing—as the Plaintiffs in this case did in the *Christ* case. *See Hammond v. City of Gadsden,* 493 So.2d 1374 (Ala.1986). At a *Hammond* hearing, the trial court reviews, among other things, the sufficiency of the evidence supporting a verdict for punitive damages and the excessiveness of any resulting award. *See Ala. Code § 6–11–23* ("In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages."). A trial court may remit a verdict for damages where it finds that the award is excessive or inadequate as a matter of law or that it is the result of bias, passion, prejudice, corruption, or other improper motive. *Green Oil,* 539 So.2d at 222; *Hammond,* 493 So.2d at 1378. Among the factors that a trial court may consider in mitigation of a punitive damages award is whether "there have been other civil actions against the same defendant, based on the same conduct." *Green Oil,* 539 So.2d at 224.

Although the Supreme Court of Alabama recently modified state court procedures for awarding punitive damages, the procedural safeguards provided to civil defendants were not altered in any way. *See Life Ins. Co. of Georgia v. Johnson,* No. CV–93–969, 1996 WL 202543, — So.2d — (Ala. Apr. 26, 1996). In *Johnson,* the Alabama Supreme Court announced a new bifurcated trial procedure for all civil cases in which punitive damages are sought. *Id.* at —. Under the new procedure, the jury first determines issues of liability, the amount of compensatory damages, and whether the defendant's conduct warrants the imposition of punitive damages. If the jury determines that punitive damages should be imposed against any defendant, the trial resumes and the jury receives evidence that was not admissible in the trial in chief but is relevant to the question of punitive damages. *Id.* As a result, evidence that formerly was admissible only to the court at a post-verdict *Hammond* hearing may now be submitted to the jury. *Id.* at —. The purpose of this new procedure is to give more guidance to the jury on the issue of punitive damages. *Id.* at —.

This procedure does not alter the protections available to a defendant to prevent excessive punitive damages awards because the court still has the power to remit the damages award if warranted. As the Alabama Supreme Court stated in *Johnson,* "[t]he adoption of this bifurcated procedure is not a substitute for post-trial procedures for reviewing punitive damages awards. These awards, when challenged as excessive or inadequate, still must be considered through the procedures set out in *Green Oil* ... and *Hammond....*" *Id.* at —.

Due to the availability of procedures to safeguard against excessive punitive damage awards, the Plaintiffs in this case do not face the risk of being subjected to an award that exceeds either the limits of the Due Process Clause of the United States Constitution or the limits of the Constitution of the State of Alabama. Should any of the Defendants in this action receive a jury verdict for punitive damages against the Plaintiffs, the Plaintiffs will be able to seek judicial review of that award. At that time, the Plaintiffs may present evidence of the amounts previously paid in the *Christ* settlement because, in Alabama, evidence that "there have been other civil actions against the same defendant, based on the same conduct" may be considered in mitigation of a damages award. *See Green*

*Oil,* 539 So.2d at 224. If the reviewing court concludes, as the *Christ* court presumably concluded, that the amount paid by the Plaintiffs in settlement of prior claims was the maximum amount allowable under the United States Constitution and the Constitution of the State of Alabama, then the court will be bound to deny an additional award of punitive damages.[3]

While the Plaintiffs' liability for punitive damages is theoretically limited to a fixed stake by the United States Constitution and the Constitution of the State of Alabama, post-trial procedures ensure that there is no possibility that they will face multiple vexation on that stake. Although this court sympathizes with the efforts of the Plaintiffs to escape further liability for punitive damages, the Plaintiffs have failed to demonstrate a risk of double vexation directed at the same fund. For this reason, this court concludes that jurisdiction under the federal interpleader statute is lacking and the Plaintiffs' claim for relief in the nature of interpleader must be DISMISSED.

### B. *Request for Declaratory Relief*

The Plaintiffs also bring a claim for declaratory relief based on their assertion that the Defendants' pending claims for punitive damages in Alabama state courts are unconstitutional. In effect, they challenge the constitutionality of the civil procedures pursuant to which such damages are awarded in Alabama. Under the principles laid out by the United States Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, however, this court must abstain from considering this claim.[4]

The *Younger* doctrine prohibits federal district courts from staying or enjoining pending state court proceedings except under special circumstances. *Id.* at 41, 91

S.Ct. at 749. The doctrine has been extended to prohibit a federal district court from entering a declaratory judgment where the judgment would effectively enjoin a state proceeding. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). In this case, a declaratory judgment that the Defendants' pending state claims for punitive damages are unconstitutional would have the effect of enjoining the state courts from hearing those claims.

The *Younger* doctrine is based on several broad and longstanding judicial policies. Foremost among these policies is the notion of "comity." Comity is the concept, fundamental to our system of government, that recognizes that our national interest is best served if the States are permitted to employ their own means in executing their functions. *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. Although "[t]he concept does not mean blind deference to 'States' Rights,'" it does mean that the federal government must "not unduly interfere with the legitimate activities of the States" in endeavoring to vindicate federal rights and interests. *Id.*

The *Younger* doctrine is also sustained by traditional perceptions of the proper function of equity in our system. *Id.* at 43, 91 S.Ct. at 750. It is a fundamental tenet that a court of equity should not enjoin a state proceeding unless there is no adequate remedy at law or the moving party will suffer irreparable harm if denied such relief. *Id.*

Finally, the *Younger* doctrine is supported by the judicial policy of avoiding unwarranted determinations of federal constitutional questions. *Pennzoil Co. v. Texaco,* 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987); *Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). This concern is particularly present when a federal court is asked to interpret state statutes

---

**3.** Furthermore, evidence may come to light in the pending state proceedings that was not considered by the *Christ* court and warrants an additional award of punitive damages. This possibility should not be precluded by this court. *See Hammond,* 493 So.2d 1374, 1379 (Ala.1986) ("[I]n considering the adequacy or excessiveness of a verdict ... each case must be determined by its own facts.").

**4.** The court notes, however, that as recently as 1991 the United States Supreme Court held that Alabama's procedures for awarding punitive damages were constitutional. *See Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

or, as here, state judicial procedures. Although a federal court may read a statute or interpret procedures to implicate the federal Constitution, the state is not bound to give the same reading. *Moore*, 442 U.S. at 428, 99 S.Ct. at 2379. The state may subsequently interpret the statute or procedure in a way that does not implicate the federal Constitution—thus rendering the federal court's interpretation merely advisory. *Id.* at 428–29, 99 S.Ct. at 2379–80. Federal courts seek to avoid such a potential waste of judicial resources.

When a party in federal court seeks a declaration that would have the effect of enjoining a state proceeding, there are three requirements that must be met for a federal court to abstain under *Younger*. *See Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The doctrine applies where 1) there is an ongoing state judicial proceeding, 2) the proceeding implicates important state interests, and 3) there is an adequate opportunity in the state proceeding to raise a constitutional challenge. *Id.* If these requirements are met, the federal court should decline to issue the declaration, absent a showing of "bad faith, harassment, or some other extraordinary circumstance." *Id.* at 435, 102 S.Ct. at 2523.

This case meets the requirements for *Younger* abstention. Currently, the Plaintiffs are defendants in several civil suits brought in various Alabama state courts by the Defendants in this action. The state proceedings implicate the important state interests in addressing claims of insurance fraud and possessing the full range of remedies, including the remedy of punitive damages, to redress findings of fraud. Furthermore, there are adequate opportunities for the Plaintiffs to raise their constitutional challenges to the Plaintiffs' claims for punitive damages in the state proceeding. The Supreme Court has stated that an adequate opportunity is present absent a showing that the Plaintiff in federal court is barred from raising the challenge in the state proceeding. *See Middlesex County*, 457 U.S. at 432, 102 S.Ct. at 2521 ("[F]ederal court should abstain 'unless state law clearly bars the imposition

of the constitutional claims.'") (quoting *Moore v. Sims*, 442 U.S. at 426, 99 S.Ct. at 2379). As previously explained by this court, procedural safeguards ensure that civil defendants in Alabama courts have an opportunity to litigate the propriety of awards for punitive damages. *See* Ala.Code § 6–11–23; *Green Oil Co. v. Hornsby*, 539 So.2d 218 (Ala.1989); *Hammond v. City of Gadsden*, 493 So.2d 1374 (Ala.1986).

Even if the requirements for *Younger* abstention are met, a federal court may still enjoin a state proceeding if there is a showing of "bad faith, harassment, or some other extraordinary circumstance." *Middlesex County*, 457 U.S. at 435, 102 S.Ct. at 2523. The Plaintiffs in this case, however, have not alleged that any of the Defendants' state court actions were brought in bad faith or to harass them. Accordingly, this court finds that the *Younger* abstention doctrine applies in this case and the Plaintiffs' claim for declaratory relief must be DISMISSED for lack of subject matter jurisdiction.

## IV. *CONCLUSION*

Based on the foregoing reasoning, this court finds that the Defendants' Motions to Dismiss are due to be GRANTED and the claims against the Defendants are due to be DISMISSED.