730 So.2d 178 (1999)
Sammy Lee HAYNES
v.
ALFA FINANCIAL CORPORATION et al.
1971089.
Supreme Court of Alabama.
March 19, 1999.
*179 Tracy T. Sproule and Leah O. Taylor of Taylor & Taylor, Birmingham, for appellant.
Robert W. Bradford, Jr., and Jeffrey J. Bradwell of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for Alfa Life Insurance Company, Alfa Financial Corporation, and Ben Layton.
COOK, Justice.
The plaintiff, Sammy Lee Haynes, appeals from a partial summary judgment entered against him and in favor of the defendants Alfa Life Insurance Corporation and Alfa Financial Corporation (collectively "Alfa") and Ben Layton in Haynes's action alleging fraud. We dismiss the appeal ex mero motu.
The issue Haynes presents relates not only to Haynes's action against Alfa, but to a collateral action in the United States District Court for the Middle District of Alabama and a number of earlier actions against Alfa containing claims similar to those of Haynes. See Alfa Financial Corp. v. Key, 927 F.Supp. 423 (M.D.Ala.1996), aff'd, 112 F.3d 1172 (11th Cir.1997). Thus, we begin our discussion with a brief review of those actions.
On February 23, 1994, Eddie and Mary Christ sued Alfa in the Circuit Court of Barbour County. Id. at 426 (citing Christ v. Alfa Life Ins. Corp., No. CV-94-022). The Christs alleged that Alfa "defrauded them by requiring them to purchase life insurance from Alfa Life and to assign the proceeds to Alfa Financial as a condition to obtaining a loan." Id. Key summarized the facts in Christ as follows:
"In the ensuing months, thirty seven additional civil actions were filed against [Alfa] in the Circuit Court for Barbour County and other Alabama state courts alleging the same fraudulent pattern and practice.
"On the eve of the Christ trial, the parties to all of the pending cases involving the alleged fraudulent pattern and practice informed the Barbour County court that they had tentatively reached a settlement (the `Christ settlement'). The terms of the settlement required [Alfa] to pay $4.1 million to the plaintiffs in 41 cases, 37 of which included claims involving the alleged fraudulent pattern and practice. $3.4 million of the settlement amount was earmarked to satisfy the claims involving the alleged fraudulent pattern and practice. Approximately 90% of the payment was designated as punitive damages. [Alfa] did not admit liability, [but contended] that [it] agreed to the settlement to avoid the risk and expense of protracted litigation and to eliminate ... exposure to punitive damages for the alleged fraudulent pattern and practice.
"At the same time, [Alfa] submitted a motion requesting that the Barbour County court hold a Hammond hearing to determine whether the settlement amount for punitive damages was sufficient to punish [it] adequately for [its] alleged illegal fraudulent pattern and practice. See Ala. Code [1975,] § 6-11-23; Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). On February 6, 1995, the Hammond hearing was held, and [Alfa] presented evidence relating to the adequacy of the punitive damage award. In ruling on the motion, the court assumed that [Alfa was] guilty of the alleged fraudulent pattern and practice. See Christ v. Alfa Life Ins. Corp., No. CV-94-022 (Ala. Cir. Ct. (Barbour Cty.) Feb. 6, 1995) (order setting forth Hammond hearing findings). After the hearing was concluded, ... Barbour County [Presiding Circuit Judge Robertson] entered an order finding that:

*180 "`This court is firmly convinced that payment of the amounts which [Alfa has] either paid or agreed to pay, as well as its other costs incurred, is sufficient to punish [it] for the alleged intent, scheme, and pattern and practice of wrongful conduct set forth above and to deter [it] and others from any similar misconduct in the future.... The court further concludes that the imposition of additional punitive damages against [Alfa] for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid in the settlements mentioned above, whether in this case or any other proceeding, would constitute duplicative, multiple, and unjust punishment.'"
927 F.Supp. at 426.
On April 25, 1995, Haynes sued Alfa and Ben Layton in the Circuit Court of Barbour County. His three-count complaint alleged that Alfa, through its "agent," Ben Layton, had falsely represented to Haynes that, in order to "be approved for a loan with ... Alfa Financial Corporation," Haynes would have to "take out a life insurance policy through Alfa Life Insurance Company." The complaint further alleged, among other things, that Haynes "was caused to purchase costly insurance he neither desired nor needed." It alleged that Alfa and Layton were "guilty of conduct evincing a pattern and practice of intentional misconduct, or ... conduct involving actual malice." Haynes sought compensatory and punitive damages on theories of (1) fraud, (2) suppression, and (3) conspiracy.
In addition to Haynes, several other persons sued Alfa after the entry of the Christ settlement order. On October 23, 1995, in response to these actions, Alfa commenced the action that resulted in an opinion reported as Alfa Financial Corp. v. Key, supra. In that action, Alfa attempted to invoke the jurisdiction of the United States District Court on the bases of (1) the "interpleader statute," 28 U.S.C. § 1335,[1] and (2) "federal question" jurisdiction, 28 U.S.C. § 1331.[2] The Key court defined Alfa's contentions more specifically as follows:
"[Alfa contends] that, based on the Hammond order entered by the Alabama Circuit Court for Barbour County in the Christ case, [it is] no longer subject to liability for punitive damages arising from the alleged fraudulent pattern and practice. [It also contends] that additional awards of punitive damages ... would violate the United States Constitution and the Constitution of the State of Alabama. In the alternative, [it contends] that, if punitive damages can still be awarded against [it], any further awards cannot exceed a total of $100,000. At the time [Alfa filed its] Complaint in this suit, [it] paid $100,000 into this court. [It gives] no explanation, however, for how [it] arrived at $100,000 as the extent of [its] liability.
"[Alfa claims] that this is an action in the nature of interpleader because [its] liability for punitive damages based on the alleged fraudulent pattern and practice is limited to a fixed stake. [It claims] that [it has] already paid the full stake over to the plaintiffs involved in the Christ settlement. Accordingly, [it claims] that [it] may no longer be subjected to liability for punitive damages and that the $100,000 [it] paid into the court should be returned to [it]. [It] also seek[s] a declaration from this court that additional awards of punitive damages are prohibited and a declaration that the Defendants' claims for punitive damages are unconstitutional under the *181 Constitution of the United States and under the Constitution of the State of Alabama."
927 F.Supp. at 427.
Haynes and the plaintiffs in the other post-Christ actions moved to dismiss Alfa's complaint. The trial court granted those motions, and the Court of Appeals for the Eleventh Circuit affirmed the judgment of dismissal, without opinion.
On May 6, 1996, Alfa and Layton moved the Barbour County Circuit Court for a partial summary judgment regarding punitive damages in Haynes's action. The motion asserted the same substantive ground Alfa had asserted in Key. Alfa argued that the Christ settlement order constituted a "determination... that [Alfa had] been sufficiently punished for the alleged wrongdoing of which [Haynes] complained," and that it was entitled to a pre-trial determination and judgment as a matter of law absolving it of all further liability for punitive damages. Judge Robertson, who had written the order approving the Christ settlement, denied the motion.
Within seven months, however, Judge Robertson resigned his judicial office. Thereafter, Alfa and Layton filed a motion to reconsider the motion for a partial summary judgment. The form and ground of the motion to reconsider were essentially identical to those of the original motion. However, the motion to reconsider was granted. The trial court "conclude[d] that the imposition of additional punitive damages against Alfa Life, Alfa Financial and their agents for such alleged misconduct, in excess of the amount already paid in the Christ action, would constitute duplicative, multiple, and unjust punishment and would be constitutionally prohibited." The trial court further stated: "Pursuant to Rule 54(b), Ala. R. Civ. P., the court DETERMINES that there is no just cause for delay of the final judgment in favor of Defendants to the extent above described and such judgment is DEEMED ENTERED."
From this order, Haynes filed a notice of appeal, seeking a determination by this Court whetheror howthe Christ settlement order can form the basis of a pre-trial adjudication in Haynes's action, or in any other action collateral to Christ, that Alfa has no further liability for punitive damages arising from a pattern and practice of conduct allegedly common to all the actions. We are unable to address this issue, because the purported Rule 54(b) certification of finality was ineffective.
Pursuant to Rule 54(b), a trial court may direct "the entry of a final judgment as to one or more but fewer than all of the claims or parties." But Rule 54(b) makes an order finaland therefore appealable"only where the trial court `has completely disposed of one of a number of claims, or one of multiple parties." Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala.1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)) (emphasis added in Tanner). In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.
However, "there is no such thing as a `claim of punitive damages.' Rather, there are claims on which our law authorizes the trier of fact to impose punitive damages if certain wrongfulness is proved by a sufficient weight of the evidence." Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909, 925 (Ala. 1994), overruled on other grounds, State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998).
It is undisputed that the order from which this appeal was taken did not address or dispose of any of the substantive claims in this case and did not fully deal with any particular party. It addressed only the question of what species of damages Haynes might recover if he succeeded at trial on one of his substantive claims. See Precision American Corp. v. Leasing Service Corp., 505 So.2d 380, 381 (Ala.1987) (Rule 54(b) did not create a final and appealable judgment where the trial court adjudicated only one portion of the claim for damages on a counterclaim, "while reserving determination on the balance of the counterclaim"). Thus, the trial court's purported Rule 54(b) certification was not effective to create a final judgment, and the order to which that certification *182 related was not appealable as of right. Haynes did not seek permission to appeal from this interlocutory order (see Rule 5, Ala. R.App. P.). Therefore, we cannot address the issues involved in this action. This appeal, being from a nonfinal order, must be dismissed.
APPEAL DISMISSED.
HOOPER, C.J., and KENNEDY, SEE, LYONS, and BROWN, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
I concur; however, before the Court concluded that this appeal should be dismissed ex mero motu, I had written the following regarding the merits of the trial court's order. I think it important that these things be said, even though this appeal is being dismissed.
The Due Process Clause of the Fourteenth Amendment of the United States Constitution will not countenance punishing a tortfeasor twice for the same wrongful conduct. BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
The plaintiff, Sammy Lee Haynes, appeals from a partial summary judgment entered by the Barbour County Circuit Court in favor of the defendants, Alfa Life Insurance Corporation and Alfa Financial Corporation (collectively "Alfa"), and Ben Layton, in this broad action seeking compensatory and punitive damages.
The pertinent facts of this case were adequately detailed in a collateral action to be discussed below, Alfa Financial Corp. v. Key, 927 F.Supp. 423 (M.D.Ala.1996). The Key court set out the facts as follows:
"[O]n February 23, 1994, ... Eddie and Mary Catherine Christ filed suit against [Alfa] in the Circuit Court for Barbour County, Alabama. See Christ v. Alfa Life Ins. Corp., No. CV-94-022 (Ala. Cir. Ct. (Barbour Cty.) Feb. 23, 1994). They alleged that [Alfa] defrauded them by requiring them to purchase life insurance from Alfa Life and to assign the proceeds to Alfa Financial as a condition to obtaining a loan. In their suit, they sought unspecified compensatory and punitive damages. In the ensuing months, thirty seven additional civil actions were filed against [Alfa] in the Circuit Court for Barbour County and other Alabama state courts alleging the same fraudulent pattern and practice.
"On the eve of the Christ trial, the parties to all of the pending cases involving the alleged fraudulent pattern and practice informed the Barbour County court that they had tentatively reached a settlement (the `Christ settlement'). The terms of the settlement required [Alfa] to pay $4.1 million to the plaintiffs in 41 cases, 37 of which included claims involving the alleged fraudulent pattern and practice. $3.4 million of the settlement amount was earmarked to satisfy the claims involving the alleged fraudulent pattern and practice. Approximately 90% of the payment was designated as punitive damages. [Alfa] did not admit liability, and [it] contend[s] that [it] agreed to the settlement to avoid the risk and expense of protracted litigation and to eliminate [its] exposure to punitive damages for the alleged fraudulent pattern and practice.
"At the same time, [Alfa] submitted a motion requesting that the Barbour County court hold a Hammond hearing to determine whether the settlement amount for punitive damages was sufficient to punish [it] adequately for [its] alleged illegal fraudulent pattern and practice. See Ala. Code [1975,] § 6-11-23; Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). On February 6, 1995, the Hammond hearing was held, and [Alfa] presented evidence relating to the adequacy of the punitive damage award. In ruling on the motion, the court assumed that [Alfa was] guilty of the alleged fraudulent pattern and practice. See Christ v. Alfa Life Ins. Corp., No. CV-94-022 (Ala.Cir. Ct. (Barbour Cty.) Feb. 6, 1995) (order setting forth Hammond hearing findings). After the hearing was concluded, the Barbour County court entered an order finding that:

*183 "`This court is firmly convinced that payment of the amounts which Alfa Life and Alfa Financial have either paid or agreed to pay, as well as its other costs incurred, is sufficient to punish Alfa Life and Alfa Financial for the alleged intent, scheme, and pattern and practice of wrongful conduct set forth above and to deter Alfa Life, Alfa Financial, and others from any similar misconduct in the future.... The court further concludes that the imposition of additional punitive damages against Alfa Life and/or Alfa Financial for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid in the settlements mentioned above, whether in this case or any other proceeding, would constitute duplicative, multiple, and unjust punishment.'
"Id. at 7-8."
Key, 927 F.Supp. at 426.
After the Christ order was entered, various lawsuits were filed against Alfa, seeking compensatory and punitive damages based on the same claims that the plaintiffs in Christ had made. On April 25, 1995, Haynes filed such an action against Alfa and Layton in the Barbour County Circuit Court. As a basis for claiming punitive damages, Haynes alleged the same fraudulent pattern and practice that had been the basis for the punitive damages settlement in the Christ case.
On October 23, 1995, Alfa sued in the United States District Court for the Middle District of Alabama, seeking declaratory and interpleader relief. Alfa Financial Corp. v. Key, 927 F.Supp. 423 (M.D.Ala.1996). Relevant to our discussion is Alfa's argument in Key that the Hammond order in the Christ case "precludes the [various post-Christ plaintiffs] from litigating their claims for punitive damages because it conclusively caps [Alfa's] liability for punitive damages." Key, 927 F.Supp. at 429. The post-Christ plaintiffs moved to dismiss Alfa's complaint, and the federal district court granted their motions. As a basis for dismissal, the court first characterized Alfa's argument as essentially a claim of res judicata, which, the court concluded, was inappropriate because "[t]he doctrine of res judicata ... applies only to the parties, or those in privity with the parties, to the suit in which the judgment was rendered." Id. The court also rejected Alfa's claim that the amount of punitive damages in the Christ case was the maximum allowed under the United States and Alabama Constitutions. The court found the protections from excessive punitive-damages awards discussed in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), to be sufficient to safeguard a defendant's constitutional due-process rights:
"Due to the availability of procedures to safeguard against excessive punitive damage awards, the Plaintiffs in this case do not face the risk of being subjected to an award that exceeds either the limits of the Due Process Clause of the United States Constitution or the limits of the Constitution of the State of Alabama. Should any of the Defendants in this action receive a jury verdict for punitive damages against the Plaintiffs, the Plaintiffs will be able to seek judicial review of that award. At that time, the Plaintiffs may present evidence of the amounts previously paid in the Christ settlement because, in Alabama, evidence that `there have been other civil actions against the same defendant, based on the same conduct' may be considered in mitigation of a damages award. See Green Oil, 539 So.2d at 224. If the reviewing court concludes, as the Christ court presumably concluded, that the amount paid by the Plaintiffs in settlement of prior claims was the maximum amount allowable under the United States Constitution and the Constitution of the State of Alabama, then the court will be bound to deny an additional award of punitive damages."
Key, 927 F.Supp. at 430-31 (footnote omitted). The United States Court of Appeals for the Eleventh Circuit affirmed the dismissal, without an opinion. 112 F.3d 1172 (11th Cir.1997).
Although the Key decision is not binding on this Court, the rationale underlying the federal district court's opinion in Key forms the basis of Haynes's arguments. However, *184 I disagree with the reasoning of the federal district court.
As Haynes argues, and as the federal district court correctly stated, the doctrine of res judicata is wholly inapplicable to Haynes's case. Thomas v. Lynn, 620 So.2d 615, 617 (Ala.1993). However, I think the question of the constitutionality of allowing multiple punitive-damages awards for the same pattern of conduct cannot be properly addressed in the context of this case by reference to Alabama's Hammond and Green Oil "post-verdict" procedures.[3]
The standard that guides this Court in dealing with the problem of excessive punitive-damages awards is set out in the opinion of the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In BMW, the Supreme Court set as its foundation (indeed, in its very first sentence) the notion that "[t]he Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a `grossly excessive' punishment on a tortfeasor." 517 U.S. at 562, 116 S.Ct. 1589 (citing TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993)). Building on that foundation, the Court listed certain "guideposts" or "indicia" of excessiveness that state courts must consider in order to avoid violations of a defendant's due process rights guaranteed under the Fourteenth Amendment. Id. at 575-85, 116 S.Ct. 1589; see U.S. Const. art. VI. All of the BMW "indicia" relate to the question of what is the maximum amount that can constitutionally be awarded to punish for a particular pattern of reprehensible conduct. The Court recognized that the line is not always easy to draw and that the maximum amount of punitive damages cannot always be determined by resorting to a simple mathematical formula:
"Once again, `we return to what we said... in [Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)]: "We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness... properly enter[s] into the constitutional calculus."' TXO, 509 U.S., at 458[, 113 S.Ct. 2711] (quoting Haslip, 499 U.S., at 18[, 111 S.Ct. 1032])."
Id. at 582-83, 116 S.Ct. 1589. However, wherever that line is to be drawn, it is without doubt that, as an objective proposition, a punishment (in any context) is excessive, and therefore violates a defendant's constitutional right to due process, if it punishes a wrongdoer concerning an act for which he is no longer legally accountable:

*185 "`[T]o punish the guilty beyond their guilt is not different from punishment of the innocent, and it cannot be done in a manner consistent with ordinary notions of justice.' Dan B. Dobbs, `Ending Punishment in "Punitive" Damages: Deterrence-Measured Remedies,' 40 Ala. L.Rev. 831, 854 (1989). When we do not punish based upon the particular wrong of a particular defendant, that defendant does not receive due process; and government is not protecting the citizen in the enjoyment of his property, when there is no life, liberty, or property interest of a plaintiff or any other citizen involved. To me, this violates `the sole object and only legitimate end of government.' Art. I, § 35, Alabama Constitution of 1901."
Campbell v. Williams, 638 So.2d 804, 820 (Ala.1994) (Houston, J., dissenting); see also Ex parte Bailey, 590 So.2d 354, 359 (Ala. 1991) (stating that Alabama "law is structured so that the guilty, not the innocent, shall be punished"); Cooper v. Wiman, 273 Ala. 699, 701, 145 So.2d 216, 217 (1962) (quoting Wiman v. Argo, 308 F.2d 674 (5th Cir. 1962) (Gewin, J., concurring specially)) (stating that "[w]e have no quarrel with the philosophy that makes sure that innocent men are not punished, that meritorious claims are not slighted, and that miscarriages of justice should be corrected at all costs").
Punitive damages are, by nature, a form of punishment. American Pioneer Life Ins. Co. v. Williamson, 704 So.2d 1361, 1366 (Ala. 1997) (stating that "`the purpose of punitive damages ... is to punish and deter a defendant's misconduct,'" quoting BMW of North America, Inc. v. Gore, 701 So.2d 507, 513 (Ala.1997)); Ayres v. Lakeshore Community Hosp., 689 So.2d 39, 41 (Ala.1997) (describing the "dual purposes of punitive damages punishment and deterrence"); Smith v. Schulte, 671 So.2d 1334, 1346 (Ala.1995) (quoting Fuller v. Preferred Risk Life Ins. Co., 577 So.2d 878, 885 (Ala.1991)) ("To accomplish its purpose, the amount of a punitive damages award `should be enough to punish the defendant and vindicate the public's right to be free of the kind of conduct of which the jury has found the defendant guilty, but [it] should not be so much as would financially destroy him'"); Green Oil, supra, 539 So.2d at 222 (stating that "the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future"). In Alabama, the determination of the amount of punitive damages necessary to sufficiently punish a tortfeasor has been largely within the discretion of a jury. Hillcrest Ctr., Inc. v. Rone, 711 So.2d 901, 909 (Ala.1997); Adams, supra, 676 So.2d at 1291; Green Oil, supra, 539 So.2d at 222; Wilson v. Dukona Corp., N.V., 547 So.2d 70 (Ala. 1989). However, ultimate decision-making rests with the trial court, as it utilizes the Hammond and Green Oil factors to determine whether the award is appropriate in light of the evidence. This procedure for levying punitive damages against a wrongdoer assumes that that court's decision is, at its end, the realization and fulfillment of the societal function of punitive damages with respect to the conduct at issue:
"However, although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence. Maryland Casualty Co. v. Tiffin, 537 So.2d 469 (Ala.1988); City Bank of Alabama v. Eskridge, [521 So.2d 931 (Ala. 1988)]; Roberson v. Ammons, 477 So.2d 957 (Ala.1985).
"[The question is,] [w]hat amount is sufficient to punish [a defendant] and to deter it, and others similarly situated, from committing similar acts in the future?"
Green Oil, 539 So.2d at 222 (emphasis added). In other words, once a tortfeasor has been punished for certain conduct by means of punitive damages, it has paid its "debt to society." To be sure, this "debt" owed by a tortfeasor, when the issue is punitive damages, is owed to society, not to any individual plaintiff. This Court has made it clear that punitive damages are sought in the interest of the state and are not an individual right:
"Such damages are assessed in proper cases in the interest of the state. They are awarded not for the compensation of the plaintiff, but as a warning to other wrongdoers. A plaintiff has no right to *186 maintain an action merely to inflict punishment. Exemplary damages are in no case a right of the plaintiff, but are assessed at the discretion of the jury for the purpose indicated...."
Meighan v. Birmingham Terminal Co., 165 Ala. 591, 599, 51 So. 775, 777-78 (1910); see also Henderson v. Alabama Power Co., 627 So.2d 878, 887 (Ala.1993); Alabama Power Co. v. Rembert, 282 Ala. 5, 6, 208 So.2d 205, 206 (1968); Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 546, 133 So.2d 24, 25 (1961); Lehigh Portland Cement Co. v. Sharit, 234 Ala. 40, 43, 173 So. 386, 388 (1937).
Therefore, after punitive damages have been assessed, the societal goals and interests of the state, as determined by the court, have been satisfied. A tortfeasor is no longer to be held accountable for any conduct that has already been punished. As I have stated above, there are few notions more reprehensible than to punish someone beyond his guilt. In order to assess additional punitive damages against a defendant who has already been punished in a previous case, a plaintiff must clearly show that the conduct alleged to be deserving of punishment is somehow outside the scope of the conduct that was considered and dealt with by the court in the previous case. There would be absolutely no legitimate reason to take the issue of punitive damages to a jury and then to have a Hammond-Green Oil hearing unless the plaintiff makes such a showing, because the defendant would have no culpability with respect to that conduct that had already been punished.
Applying those principles to this case, I note that Alfa's conduct toward Haynes was considered in the Christ order. The evidence before the trial court indicated that there were only 271 possible plaintiffs with claims like the Christs' (and like Haynes's), because "only 271 of Alfa Financial's 7247 outstanding loans involved an assignment of a life policy to Alfa Financial." (Trial court's order in Christ.) The trial court then went forward and approved a punitive-damages award based on its consideration of all 271 acts of wrongdoing. As mentioned above, the trial court in Christ found that this award would sufficiently punish and deter Alfa and others:
"`This court is firmly convinced that payment of the amounts which Alfa Life and Alfa Financial have either paid or agreed to pay, as well as its other costs incurred, is sufficient to punish Alfa Life and Alfa Financial for the alleged intent, scheme, and pattern and practice of wrongful conduct set forth above and to deter Alfa Life, Alfa Financial, and others from any similar misconduct in the future...."
Nothing in the record indicates that the pattern and practice of conduct alleged by Haynes is somehow outside the scope of the pattern and practice of conduct that was punished in Christ; in fact, given the facts above, it is difficult to see how Haynes's allegations could be outside the conduct dealt with in Christ.
The Due Process Clause of the Fourteenth Amendment of the United States Constitution will not countenance punishing Alfa twice for the same wrongful conduct. As the Christ trial court concluded,
"the imposition of additional punitive damages against Alfa Life and/or Alfa Financial for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid in the settlements mentioned above, whether in this case or any other proceeding, would constitute duplicative, multiple, and unjust punishment."
Alfa has been punished for the alleged wrongful pattern of conduct. Because Alfa has been punished, the Due Process Clause will not allow a plaintiff such as Haynes to resurrect Alfa's culpability. Therefore, the trial court properly entered the summary judgment.
NOTES
[1] Section 1335 provides in pertinent part:

"(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any ... corporation ... having in ... its custody or possession money or property of the value of $500 or more ..., if
"(1) Two or more adverse claimants, of diverse citizenship ..., are claiming or may claim to be entitled to such money or property...."
The Key court wrote: "The federal interpleader statute is intended to enable a party seeking interpleader to avoid double vexation on a single liability resulting from adverse claims on the stake it holds." 927 F.Supp. at 428.
[2] Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."
[3] This constitutional question was raised in BMW, but the Supreme Court specifically declined to address it because the case was not in an appropriate posture for the Court to do so. See BMW, 517 U.S. at 613 n. 4, 116 S.Ct. 1589 (Ginsburg, J., dissenting). One of the reasons given by the Court may raise an issue that requires some clarification:

"[I]f BMW had already suffered a punitive damages judgment in connection with its nondisclosure policy, Alabama's highest court presumably would have taken that fact into consideration. In reviewing punitive damages awards attacked as excessive, the Alabama Supreme Court considers whether `there have been other civil actions against the same defendant, based on the same conduct.' [BMW of North America, Inc. v. Gore,] 646 So.2d 619, 624 (Ala.1994) (quoting Green Oil Co. v. Hornsby, 539 So.2d 218, 224 (Ala.1989)). If so, `this should be taken into account in mitigation of the punitive damages award.' Ibid. The Alabama court accordingly observed that Gore's counsel had filed 24 other actions against BMW in Alabama and Georgia, but that no other punitive damages award had so far resulted. Id., at 626."
517 U.S. at 613 n. 4, 116 S.Ct. 1589. This Court's language quoted by the United States Supreme Court in BMW supports the general position that in reviewing a punitive-damages award, a court can look to awards already made to previous plaintiffs based on the same conduct that is the basis for the award to the present plaintiff. If, for example, one plaintiff receives punitive damages based only on the conduct with respect to him, but a later plaintiff is awarded punitive damages with respect to a pattern of that same conduct that would include the wrongdoing imposed on the first plaintiff, the court should reduce the second plaintiff's award to account for the previous punishment. What that language does not and cannot mean, consistent with the Due Process Clause, is that the Hammond and Green Oil procedures assume that one plaintiff can maintain a claim for punitive damages based on allegations of the exact same conduct that had been previously punished.